HOLLOWAY, Circuit Judge.
 

 Defendant-appellant Jerome G. Beery was charged with three counts of concealing assets from Dan E. Turner, the receiver and later the trustee in the bankruptcy proceeding in which Beery was adjudicated a bankrupt, in violation of 18 U.S.C. § 152 (1970). Beery was similarly charged with one count of withholding a document from the receiver/trustee in violation of 18 U.S.C. § 152. Beery was also charged with violating 18 U.S.C. § 1623, perjury before the grand jury. Beery was tried before a jury and convicted on the concealment and withholding counts and acquitted of perjury. He has brought this timely appeal.
 

 The facts surrounding Beery’s bankruptcy proceeding are briefly noted.
 
 [1]
 
 Beery originally filed a voluntary petition seeking relief under Chapter XI of the Bankruptcy Act on January 16, 1976. Dan Turner was appointed receiver on January 19. Upon Beery’s failure to file the required state
 
 *859
 
 ments and schedules and his voluntary motion to withdraw the Chapter XI proceeding, the proceeding was converted to one in straight bankruptcy and Beery was adjudicated a bankrupt on April 15, 1976. Dan Turner was appointed trustee at that time.
 

 As noted, Beery was charged with and convicted of three counts of concealing assets and one count of withholding assets from Dan Turner, who served as receiver and later as trustee. On appeal Beery claims a number of errors. The arguments meriting discussion are treated below.
 

 I
 

 Beery argues that the district court erred in not granting his motion to dismiss the indictment based on his assertion that he was forced to testify in the bankruptcy proceeding over his Fifth Amendment objections. Beery points to the immunity granted by 11 U.S.C. § 25(a)(10) (1976),
 
 [2]
 
 which provides in pertinent part:
 

 The bankrupt shall
 
 ... at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and
 
 at such other times as the court shall order, submit to an examination
 
 concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge;
 
 but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given by him in the hearing upon objections to his discharge ...
 
 (Emphasis added).
 

 Beery asserts that these immunity protections were violated in that witnesses against him in the grand jury proceeding and at the criminal trial had been his interrogators when he was compelled to testify in the bankruptcy proceedings; that his compelled testimony at a Rule 205 hearing in February 1976 and a hearing in September 1977 was detailed and covered areas in this criminal case; and that violation of his constitutional rights as protected by the immunity provisions of 11 U.S.C. § 25(a)(10) (1976) requires reversal, citing
 
 Kastigar v. United States,
 
 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212,
 
 inter alia.
 
 (Brief of Appellant at 29-34; Reply Brief at 2-4).
 

 A
 

 We turn first to the argument that the indictment should have been dismissed because Beery’s immunized testimony was used in the grand jury proceeding. At the outset we consider the question whether such a claim may serve as a basis for attacking the indictment.
 

 An indictment valid on its facé is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence, or even on information obtained in violation of a defendant’s privilege against self-incrimination.
 
 United States v. Calandra,
 
 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561;
 
 Lawn v. United States,
 
 355 U.S. 339, 349-50, 78 S.Ct. 311, 317, 2 L.Ed.2d 321;
 
 United States v. Nunez,
 
 668 F.2d 1116, 1125-26 (10th Cir.).
 
 *860
 
 The Supreme Court, however, has recognized that there may be a different result where what was transpiring before the grand jury would itself violate a constitutional or statutory privilege.
 
 See United States v. Calandra,
 
 414 U.S. at 346, 94 S.Ct. at 619. Where such a violation is occurring in the grand jury proceeding itself, the violation of the constitutional right or privilege is a proper basis for dismissal of an indictment.
 
 United States v. Helstoski,
 
 635 F.2d 200, 203-05 (3d Cir.).
 

 Here the claim is that the prosecution violated Beery’s statutory right not to have his compelled testimony used against him. Section 25(a)(10) mandates that a bankrupt’s testimony given during certain hearings, and evidence derived therefrom, shall not be used against him in any criminal prosecution. A grand jury hearing is clearly a criminal proceeding under this statute.
 
 See In re North Am. Inv. Co.,
 
 559 F.2d 464, 466 (7th Cir.);
 
 United States v. Boyd,
 
 404 F.Supp. 413, 416 (S.D.N.Y.),
 
 aff’d,
 
 538 F.2d 314 (2d Cir.),
 
 cert. denied,
 
 429 U.S. 918, 97 S.Ct. 309, 50 L.Ed.2d 283, 430 U.S. 909, 97 S.Ct. 1182, 51 L.Ed.2d 586;
 
 United States v. Lawson,
 
 255 F.Supp. 261, 263 (D.Minn.); 1A Collier on Bankruptcy 1023 n.24 (14th ed.); and cases cited in Annot. 22 A.L.R.Fed. 643, 662-63. Thus, as the introduction of immunized testimony or of evidence derived by its use occurs before the grand jury, there would be a direct violation of the bar in § 25(a)(10) against such use or derivative use of evidence by the Government, infringing defendant’s immunity. Under such circumstances the indictment must be dismissed.
 
 See In re North Am. Inv. Co.,
 
 559 F.2d 464, 466 (7th Cir.);
 
 cf., United States
 
 v.
 
 Helstoski,
 
 635 F.2d 200, 205-06 (3d Cir.) (dismissal of indictment held the proper remedy where testimony was presented to grand jury in violation of the Speech or Debate Clause);
 
 United States v. Nemes,
 
 555 F.2d 51, 55-56 (2d Cir.) (dismissal of indictment held proper remedy where evidence derived from testimony given under state grant of immunity was introduced to grand jury, but the court refused to decide whether dismissal was invariably required);
 
 United States v. McDaniel,
 
 482 F.2d 305, 311-12 (8th Cir.) (remedy held proper where prosecutor had read defendant’s state grand jury testimony given under immunity).
 

 In sum, we conclude that if defendant’s immunity granted by 11 U.S.C. § 25(a)(10) was violated by any use or derivative use before the grand jury of testimony which defendant was compelled to give at bankruptcy proceedings covered by § 25(a)(10), the indictment must be dismissed, unless the error is held harmless, beyond a reasonable doubt.
 
 [3]
 

 B
 

 As noted above, defendant Beery argues that his immunity was violated by witnesses testifying, at the grand jury proceeding and at trial, that they were persons who had interrogated him in the bankruptcy proceedings when he was compelled to testify, that his compelled testimony was detailed and covered areas in this criminal case, and that his rights granted by the immunity statute, 11 U.S.C. § 25(a)(10), were violated, citing
 
 Kastigar, inter alia.
 
 (Brief of Appellant at 29-34; Reply Brief at 2-4). The Government says that Beery made no argument in the trial court complaining of violation of his use immunity rights; that he relied only on a claim of transactional immunity, which lacks merit. (Brief of Ap-pellee at 18-19).
 

 We conclude that the claim was presented sufficiently in the trial court so that we must consider the merits of the use and derivative use issue. It will be helpful to outline in some detail the defendant’s contentions and the development of the issue in the trial court.
 

 Defendant Beery asserts on appeal that some of his bankruptcy testimony was re
 
 *861
 
 peated by the trustee, Dan Turner, to the grand jury and refers to three portions of Turner’s testimony. First, Beery points to the following statement before the grand jury by the trustee (IV R. 7-8):
 

 ... [W]hen the arrangement prepared by Beery was presented to the Court ... he was supposed to provide the Court with an itemized list of all his debts and his assets and he refused. His attorney prepared it and he refused to sign that document and verify that this was a complete list of all his assets and liabilities ...
 

 Second, Beery complains about the following grand jury testimony of the trustee, Mr. Turner (IV R. 9):
 

 Q [W]hen you serve in each position [as receiver or trustee], you take the assets — they must be turned over?
 

 A The bankrupt must be candid with you and turn over all his assets.
 

 Q In this case, was Mr. Beery candid with you?
 

 A No, he never has been, never.
 

 Beery further points to that part of the trustee’s grand jury testimony where Turner was asked to explain what he knew about some of the money Beery had allegedly concealed. Turner responded (IV R. 12):
 

 We don’t know what became of that money, whether he gambled it away, whether he took it or what, but that money has been lost or we have no idea what he did with it.
 
 I know we have questioned him on several occasions about it. His first response was, “You show me what I’ve did with it or where we took it and then I’ll tell you if you’re right,” and then after we traced it out and we showed him that he had the money, he took the Fifth Amendment and he wouldn’t testify to it in Court, so we’ve never been able to make a determination what he did with it.
 
 (Emphasis added).
 

 * * Ik * * #
 

 It is true, of course, that the statute confers use and derivative use immunity only. Moreover the clear holding in
 
 Kastigar v. United States, supra,
 
 406 U.S. at 458-62, 92 S.Ct. at 1663-1665, was that a statute granting use and derivative use immunity is coextensive with the Fifth Amendment privilege and may constitutionally supplant it.
 
 See also Zicarelli v. New Jersey Investigation
 
 Commission, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234. We must examine the record to determine whether defendant’s claim and the circumstances of its presentation call on us to consider on appeal the use and derivative use question. Issues not raised in the district court are usually considered on appeal only under exceptional circumstances or to prevent manifest injustice. See
 
 United States v. Oakes,
 
 564 F.2d 384, 387 (10th Cir.),
 
 cert. denied,
 
 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521.
 

 Defendant Beery filed three pre-trial motions below claiming that he had been compelled to testify over his Fifth Amendment objections in the bankruptcy proceeding.
 
 (See
 
 I R. 40, 41, 64). The Government is correct in saying that Beery moved to dismiss or quash the indictment as the relief sought from his compelled earlier testimony. Nevertheless the fact of his being compelled to testify was clearly alleged with respect to the earlier bankruptcy proceedings, even if the proper remedy was not sought. In fact, the third motion, a motion to quash the indictment, alleged, “defendant has been forced to testify against his will concerning his financial affairs a number of times over the last years.”
 
 (Id.
 
 at 64). These pre-trial motions were all denied.
 

 The question concerning the compelled testimony was raised again when the case was called for trial. At that point Beery was placed under oath by the trial judge near the beginning of the proceedings to take statements about his indigency, but the record shows no termination of Beery’s statements being under oath during the remainder of that hearing. In his subsequent representations, which we treat as sworn statements, defendant made several references to his compelled testimony. He referred to remaking, at a proper time, a
 
 *862
 
 motion regarding the fact that one cannot be tried for a criminal matter if he had been compelled to testify about it, and requested a transcript for that purpose. (V R. 25). The transcript sought was that of the September 1977 hearing before the district judge in the bankruptcy case on the issue whether Beery was a farmer and thus exempt from being adjudicated a bankrupt without his consent.
 
 [4]
 

 Moreover, the fact that the trial judge and the prosecuting attorney were alerted to the use and derivative use immunity problem is shown by the record. When Beery’s claim of having been compelled to testify at the September 1977 hearing was made, the Assistant United States Attorney made a statement to the court that he was “unfamiliar with what transpired at the hearing that Mr. Beery refers to. I have made an effort to not learn of what went on in those hearings because of the immunity which would attach to those hearings.”
 
 (Id.
 
 at 27). The court questioned defendant Beery further about the September 1977 hearing and whether he had testified there, and defendant advised the court that he had, over his objections.
 
 (Id.
 
 at 32). The court then inquired of the prosecuting attorney whether this was the testimony which he claimed had nothing to do with the misstatements before the grand jury charged in the criminal case, and whether the Government would prove the perjury charge “from other evidence that you have?”
 
 (Id.
 
 at 33). The prosecuting attorney answered in the affirmative and stated he had several witnesses who would testify with respect to defendant’s statements.
 
 (Id.).
 

 Defendant later made reference at this hearing when the case was called for trial to his motions on which he had desired an evidentiary hearing, citing his objections on Fifth Amendment grounds.
 
 (Id.
 
 at 44-45). The defendant referred again to his testimony at the September 1977 hearing and the prosecuting attorney made a further statement in response (V R. 45):
 

 I was just going to say that goes to abuse [sic] of immunity only and I wanted to get it on the record, I have not seen that transcript or know anything about that hearing.
 

 It is true that defendant requested dismissal and quashing of the indictment and argued transactional immunity.
 
 (E.g.,
 
 I R. 40, 64). Nevertheless, the facts and circumstances were developed before the trial court, by defendant’s sworn statements and motions, that he had been compelled to testify and that this was over his Fifth Amendment objections. Moreover, the trial judge and the prosecuting attorney were obviously considering the use and derivative use immunity problem. The prosecuting attorney clearly made his representations, cited above, in response to the requirements of
 
 Kastigar
 
 and the heavy burden cast on the Government in such circumstances.
 

 The Supreme Court laid down this strict rule which applies where the constitutional privilege is supplanted by an immunity grant:
 

 One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.
 

 Kastigar, supra,
 
 406 U.S. 460-61, 92 S.Ct. at 1664.
 

 We are convinced that defendant’s motions and statements before the trial court sufficiently raised the claim under the statute. It was also developed to the extent that the trial judge and the prosecuting attorney were alerted to the use and derivative use problem.
 
 See United States v. Nemes,
 
 555 F.2d 51, 54 (2d Cir.). We are dealing with a sensitive constitutional claim presented by a layman himself. We conclude we must treat the merits of the use and derivative use issue.
 

 
 *863
 
 C
 

 We conclude that the issue must be remanded. The defendant’s pretrial motions were all denied, and the trial judge declined to hear any further motions to dismiss on the day before trial when the statements cited above were made. (V R. 45). Thus the defendant’s claims on the immunity issue were rejected, expressly or implicitly.
 

 The need for remand is shown by several circumstances in the record. The trustee, Dan Turner, was a witness at the grand jury proceeding and at trial. He had attended bankruptcy hearings and knew of Beery’s testimony at them. Testimony by the trustee at the grand jury proceeding was presented through questioning by the prosecuting attorney. (Government Exhibit 60, IV R. 2-15, admitted at trial, VI R. 380). These circumstances, together with Beery’s motions and representations about his being compelled to testify at the bankruptcy hearings, made necessary a determination under
 
 Kastigar
 
 concerning Beery’s bankruptcy testimony and whether the Government’s case was derived from legitimate independent sources.
 

 Moreover, the Government made no showing which could support a ruling in its favor on the issue. The conclusory assertions by the prosecuting attorney were insufficient to meet the heavy burden of the Government.
 
 United States v. Nemes, supra,
 
 555 F.2d at 54-55. The Government bears a “heavy burden” in making the required proof.
 
 Kastigar, supra,
 
 406 U.S. at 461, 92 S.Ct. at 1665. While the prosecuting attorney made general denials, “[t]hese conclusory statements are simply not enough to carry the burden.”
 
 United States v. Seiffert,
 
 463 F.2d 1089, 1092 (5th Cir.).
 
 [5]
 

 There was not a sufficient showing or findings addressing the problem. Thus this issue must be remanded. The district court should first require Beery to demonstrate that he was required to submit to an examination at bankruptcy proceedings covered by § 25(a)(10) concerning matters relating to the federal prosecution. If such a showing is not made by defendant, the convictions should be reinstated.
 

 If such a showing is made, the district court should then afford the Government an opportunity to meet its burden of proof as to its sources of its evidence presented to the grand jury and at trial, with any response the defendant may have. If the evidence presented to the grand jury is not found to have been properly “derived from legitimate independent sources,”
 
 Kastigar, supra
 
 406 U.S. at 461-62, 92 S.Ct. at 1665, then the indictment must be dismissed, unless the error is held harmless, beyond a reasonable doubt; if only evidence presented at trial is not found to have been properly derived, then a new trial must be ordered, unless the error is held harmless, beyond a reasonable doubt. If the Government sustains its burden of proof, or if errors found are held harmless, beyond a reasonable doubt, then the convictions should be reinstated.
 
 See United States v. Nemes, supra,
 
 555 F.2d at 55.
 

 II
 

 Defendant Beery challenges the sufficiency of the evidence to support the convictions, arguing that his motions for acquittal were erroneously denied. We will discuss his major contentions attacking the Government’s case.
 

 
 *864
 
 The question when reviewing the convictions is whether “considering the evidence in the light most favorable to the government, there is substantial evidence from which a jury might reasonably find that an accused is guilty beyond a reasonable doubt.”
 
 United States v. Jorgenson,
 
 451 F.2d 516, 521 (10th Cir.),
 
 cert. denied,
 
 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793;
 
 see Glasser v. United States,
 
 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 860. Considering the record in this light as we must on the appeal from the guilty verdict, there was evidence tending to show the circumstances outlined below.
 

 Counts I and II charged Beery with concealing the sums of $19,200 and $40,000 from Dan Turner, the receiver/trustee. Beery filed his petition in bankruptcy on January 16, 1976. Dan Turner was appointed receiver on January 19, and later appointed trustee. (V R. 145-46). Beery was not at the hearing where the receiver was appointed but his counsel was there. (VII R. 693-94). Thus Beery’s counsel was notified on January 19 that the receiver was taking control of the assets, although Beery was not separately given notice. (VII R. 697-98). Beery learned of the appointment, however, no later than February 5, 1976, on which date he appeared for a Rule 205 examination and was there questioned by the receiver.
 

 On January 6, 1976, Beery had been sent a check for $40,000 by Stolter and Company, a commodity broker with whom Beery had a trading account. The check was deposited into Beery’s account at the First National Bank in Albuquerque, New Mexico on January 9, 1976. (II R. 231, 235; V R. 272-73). On January 14, 1976, Stolter and Company wired $19,200 to the same bank account. (II R. 232, 233; V R. 273-74).
 

 On January 19, 1976, Beery wrote an $18,607.24 check to the First National Bank in Albuquerque and the bank issued two cashier’s checks; one check for the sum of $3506.74 payable to the American Express Co., and the other payable to Beery in the sum of $15,100. (II R. 238, 243, 244; V R. 284).
 

 On January 20, 1976, Beery wrote a $40,-000 check to the First National Bank in Albuquerque and the bank issued two more cashier’s checks. One in the amount of $11,500 was made payable to Beery. The second in the amount of $28,500 was made payable to Stolter and Company. The latter check was returned to the bank by Beery on January 23, and the bank issued another cashier’s check in the same amount payable to Beery. (II R. 240, 245, 246, 247; V R. 284-86).
 

 There was also evidence tending to show that Beery took the three cashier’s checks that were payable to him to Las Vegas. On January 29, Beery submitted $67,400 including $55,100 in the form of cashier’s “check” to the cashier at the Dunes Hotel and Country Club, and he similarly submitted $5,000 on January 30. (VI R. 299-300). The record does not clearly disclose when Beery left the Dunes, but he was in Kansas on February 5,1976, for his Rule 205 examination, during which he did not disclose the $59,000 he was alleged to have concealed. (VII R. 696-97). Beery returned to the Dunes and was there on February 15-16. (II R. 260). According to a Dunes’ accountant, the records of the hotel show that Beery gambled against the money at the Dunes and lost it.
 
 [6]
 
 On February 15, 1976, the three cashier’s checks payable to Beery and bearing the endorsements of Beery and the Dunes Hotel (for $15,000, $11,500 and $28,500, described above) were deposited in the Valley Bank of Nevada, which is the bank of the Dunes Hotel. (VI R. 303).
 

 Based on these facts we believe there was sufficient evidence to support the guilty verdicts as to Counts I and II. Beery argues that the evidence showed that he
 
 *865
 
 was not aware that a receiver had been appointed until well after the alleged offenses occurred. (Brief of Appellant at 44). While there is authority that an offense under 18 U.S.C. § 152 cannot be committed until the accused has knowledge that a receiver or trustee has been appointed,
 
 [7]
 

 see United States v. Yasser,
 
 114 F.2d 558, 560 (3d Cir.);
 
 Reiner v. United States,
 
 92 F.2d 823, 825 (9th Cir.);
 
 Rachmil v. United States,
 
 43 F.2d 878, 880 (9th Cir.),
 
 cert. denied,
 
 283 U.S. 819, 51 S.Ct. 344, 75 L.Ed. 1434;
 
 United States v. Grant,
 
 1 F.2d 723, 725 (E.D.Mich.);
 
 but see Douchan
 
 v.
 
 United States,
 
 136 F.2d 144, 146-147 (6th Cir.),
 
 cert. denied,
 
 319 U.S. 773, 63 S.Ct. 1439, 87 L.Ed. 1721, there is sufficient evidence to show that Beery continued to conceal the assets after he knew of the receiver’s appointment. As noted, Beery was apprised of the appointment no later than February 5, 1976. After this date Beery returned to the Dunes and was there on February 15 and 16, when three of the cashier’s checks at issue were cashed.
 

 The fact that Count I charged Beery with committing the offense “on or about January 20, 1976,” and Count II charged Beery with the commission of the offense “on or about January 21, 1976,” (I R. 1), is not significant here. It is sufficient if the evidence shows that the crime occurred on a day in close proximity to the date alleged in the indictment, where time is not an essential element of the offense.
 
 Whitlock v. United States,
 
 429 F.2d 942 at 945 (10th Cir.). Similarly the fact that Beery may have mailed the $3,506.74 cashier’s check to American Express Company prior to gaining knowledge of the receiver’s appointment
 
 [8]
 
 does not negate the otherwise sufficient evidence. While the evidence as to the amount of money concealed may have thereby been less than the amount alleged in the indictment, this variance was not prejudicial to Beery. A variance is not fatal to the Government’s case, unless it affects the substantial rights of the accused.
 
 United States v. Brewer,
 
 630 F.2d 795, 799 (10th Cir.). Since there was evidence that Beery concealed the three cashier’s checks made payable to him after obtaining knowledge of the receiver’s appointment, the fact that the amount concealed was less than the amount contained in the indictment does not affect any substantial right.
 
 See United States v. Wodiska,
 
 147 F.2d 38, 39 (2d Cir.). Thus Beery’s argument that he did not have knowledge of Turner’s appointment as receiver as of the time of the alleged offense must fail.
 

 Beery also argues that there was insufficient evidence of his intent to conceal, claiming that the evidence shows that he “considered the bankruptcy proceeding invalid and openly resisted the efforts of both
 
 *866
 
 Turner brothers to seize assets.” (Brief of Appellant at 44). It is true that a statement attached to the schedule of assets and liabilities filed by Beery in the bankruptcy case did state (V R. 150):
 

 These statements of affairs and schedules are prepared and filed pursuant to order of this Court and without in any way consenting to the adjudication or the jurisdiction of this Court.
 

 A similar but more elaborate statement was attached to a letter written by Beery in March 1977. (V R. 241—44). It is also true that the requirements of 18 U.S.C. § 152 are not met unless the concealment was made “knowingly and fraudulently.” To establish such fraud it is necessary to show false representation of a material fact, made with knowledge of its falsity and with intent to deceive.
 
 United States v. Nill,
 
 518 F.2d 793, 800 (5th Cir.). The fact, however, that Beery believed the bankruptcy proceeding to be invalid is not relevant to his intent to conceal. Beery was made aware of the appointment of the receiver no later than February 5, 1976. Beery was also present in court on April 15, 1976, when he was adjudicated a bankrupt and the trustee was appointed. Since the court entering these orders had jurisdiction over both the subject matter and Beery, Beery was bound by these orders until reversed or otherwise set aside,
 
 see United States v. United Mine Workers,
 
 330 U.S. 258, 293, 67 S.Ct. 677, 695, 91 L.Ed. 884; and was subject to the penalties of 18 U.S.C. § 152 if he knowingly and fraudulently concealed from the receiver/trustee any property belonging to the estate. Thus any evidence tending to show that Beery considered the bankruptcy proceeding to be invalid did not disprove the Government’s case or compel an acquittal.
 

 Beery does not make any separate argument that there was insufficient evidence to support the guilty verdicts on Counts III and IV. Count III charged Beery with knowingly and fraudulently withholding a certificate of deposit from the receiver/trustee. In Count IV Beery was charged with knowingly and fraudulently concealing the sum of $10,411.00 from the receiver/trustee. (I R. 2).
 

 As to Count III, the evidence tended to show that Beery had the C. D. in his possession from the time he filed the Chapter XI petition until October 1976, when he mailed it to the bank where it had been issued. Beery asked the bank to cash the C. D. and send him the money. (V R. 227-30). During this period Beery did not disclose the C. D.’s existence to the trustee. Beery did not disclose its existence at the Rule 205 examination in February 1976 or in his schedules of assets filed in July 1976. (II R. 165-68, 203-05; VII R. 697). From this evidence it could be concluded that Beery knowingly and fraudulently withheld the C. D. from the trustee.
 
 [9]
 

 
 *867
 
 There was also sufficient evidence as to Count IV. This is so even though the evidence shows concealment at a different time than was alleged in the indictment. Count IV reads (I R. 2):
 

 From on or about January 16, 1976, to on or about October 4, 1976, . .. JEROME GRIGGS BEERY DID KNOWINGLY AND FRAUDULENTLY CONCEAL FROM Dan E. Turner, Receiver, Trustee, and an officer of the Court charged with the control and custody of property, the sum of $10,411.00 which was paid to JEROME GRIGGS BEERY by Ray E. Friedman & Company, Chicago, Illinois ... all in violation of 18 U.S.C. § 152.
 

 Thus the indictment charged concealment from January 16 to October 4, 1976.
 

 There was no evidence, however, to support concealment prior to October 4. The trustee, Dan Turner, testified that he believed Beery’s commodity accounts including the Friedman account were disclosed to him in January 1976 by Beery’s attorney, and that Beery did not conceal this information from him. (V R. 141; VII R. 740-42). He also testified that the $10,000 in the Friedman account was disclosed at the Rule 205 hearing in February 1976. Moreover, the schedules of Beery’s assets filed in July 1976 show the Friedman account as an asset. (II R. 171, 205). Thus the evidence indicates that Beery did not conceal, but disclosed, the money in the Friedman account.
 

 There was, however, evidence showing concealment on October 4, 1976, and thereafter. On that date $10,411 was withdrawn from that account and a check for that amount was sent to Beery. (VI R. 335-36). There is no indication in the record of what subsequently became of this money. After the money was paid to Beery, Turner asked Friedman to turn the money over to him and discovered that Friedman had sent the money to Beery. Turner testified that at that point he had two options — he could have brought suit to get the money from Beery or sought a show cause order against Friedman to get the funds. Turner stated that he sued Friedman because he was more likely to get the funds from the company. (VII R. 795-96).
 

 Considering this evidence in the light most favorable to the Government, it appears that Beery took the money without telling the trustee of his actions. The fact that this concealment took place shortly after the dates specified in the indictment is not a material variance. It is sufficient if the evidence shows that the crime occurred at a time in close proximity to the dates alleged in the indictment, where time is not an essential element of the offense.
 
 Whitlock v. United States,
 
 429 F.2d 942, 945 (10th Cir.). Thus we conclude there was sufficient evidence to support the verdict as to Count IV.
 

 Moreover, Beery’s belief that the bankruptcy proceeding was invalid would likewise be irrelevant to the intent required for the concealment of property under Count IV for the reasons discussed above. The same reasoning would likewise apply to the charge of withholding property under Count III. The receiver and trustee are charged with the duty of taking charge of the assets of the estate. 11 U.S.C. §§ 11(a)(3), 75(a)(1); Bankruptcy Rules 201(a), 605(a). Beery was bound by the appointment of the receiver and later the trustee until the order of appointment was reversed or set aside. Thus Beery’s belief that the bankruptcy proceeding was invalid is irrelevant to his intent to conceal or withhold assets.
 

 In sum, we conclude that there was sufficient evidence before the jury on the four counts to sustain the convictions.
 

 Ill
 

 We will also consider several additional challenges by defendant Beery to his convictions.
 

 A
 

 Defendant Beery argues that the court erred in excluding certain evidence including proof offered to define the assets of the bankrupt and to show the mixing of assets
 
 *868
 
 between Beery and his wife, improper actions taken by the trustee such as converting exempt property belonging to Beery and property of others, and that Beery believed the adjudication of bankruptcy -ivas invalid. Beery argues that he was entitled to show that the assets he was charged with concealing did not belong to him and were thus not properly part of bankruptcy estate, citing
 
 Dean v. United States,
 
 51 F.2d 481 (9th Cir.). Beery also contends that any fact tending to show a bankrupt’s lack of intent to conceal or withhold would be relevant. (Brief of Appellant at 44—46; Reply Brief at 7-8).
 

 We agree that evidence tending to show whether the assets were owned by Beery or whether Beery had the requisite intent to commit the offenses charged would be relevant. Evidence showing the nature and extent of Beery’s interest in the funds and document was admissible. However, we find no reversible error in the trial court’s rulings. The fact that the trustee was responsible for selling exempt property or property of others, or for other improper actions, does not relate to the specific assets Beery was charged with concealing and withholding. As noted in Part II, Beery’s belief as to the validity of the court’s order and its jurisdiction to adjudicate him a bankrupt is irrelevant. Until reversed, the order must be observed.
 
 United States v. United Mine Workers,
 
 330 U.S. 258, 290-91, 67 S.Ct. 677, 694, 91 L.Ed. 884.
 

 The evidence offered to show the mixing of assets between Beery and his wife was relevant. Had Beery sought to establish sole ownership of the assets by his wife, the evidence would have been critical. Beery, however, merely sought to show that he and his wife had mixed their assets and that certain assets were jointly owned. In his offers of proof, Beery offered testimony from witness Legere and from Beery’s children to the effect that there was a family farming operation, that the money he was charged with concealing and withholding in this criminal case was money jointly owned with his wife, and that she was not a party in the bankruptcy proceeding. Beery sought to show that there was a mixed pot of assets containing earnings of both Beery and his wife, which was “ours.”
 
 (See
 
 VII R. 596-97, 599, 602, 617, 831-33).
 

 It was on the basis of these offers of proof that the trial judge rejected the evidence. The judge indicated rather clearly that his basis for so ruling was the fact that the bankruptcy court had previously ruled against Beery on this joint ownership theory. While we cannot agree with this reasoning,
 
 [10]
 
 and while the evidence was relevant and admissible, we are convinced that there was no reversible error in the exclusion of the evidence. Even under his own theory, Beery had an interest in the assets allegedly concealed and withheld, and thus had a duty to disclose his interest. The Bankruptcy Rules and Official Forms require a bankrupt, and a debtor in a Chapter XI proceeding, to file schedules listing any interest in real or personal property, including interests in estates by the entirety and community property.
 
 See
 
 Bankruptcy Rules 108(a), 11-11(a); Official Bankruptcy Form 6, Schedule B, and Form 11-F4;
 
 see generally
 
 1A Collier on Bankruptcy 995-996.3 (14th ed.). Thus Beery had a duty to disclose assets that were owned jointly with his wife in any event. That Beery owned and controlled at least a substantial interest in the funds is indicated by the evidence detailed as to Counts I and II that Beery gambled against the money and lost it.
 

 
 *869
 
 Therefore, no reversible error was committed in excluding the proffered evidence although it was relevant and should have been admitted.
 

 B
 

 Defendant also argues that his right to a speedy trial was violated, citing the Speedy Trial Act. The district court rejected this claim as lacking merit, and we agree.
 

 The indictment was filed on September 14, 1978, and the trial was held from March 21 to March 30, 1979. In the interim, defendant Beery requested a court order providing that his attorney’s fees be paid out of the bankruptcy estate, moved for a change in venue, filed ten separate motions to dismiss, fourteen separate motions to quash the indictment, and a motion to produce certain documents. He also made requests for evidentiary hearings and some were held. Beery further asked for a stay in the proceedings until the matter of attorney’s fees could be settled. This request was denied two days later. Finally, Beery requested but was denied a continuance the day before trial began to obtain a transcript of part of the bankruptcy proceedings.
 

 The record shows that Beery did file a motion to dismiss based on the alleged denial of his right to a speedy trial. The motion was filed on March 20, 1979, one day before the trial began. (I R. 78). The record also shows that during a hearing on February 23, 1979, Beery made a request to have his trial held as soon as possible. The prosecutor stated that he needed a couple of weeks to serve the subpoenas. The judge did not set a date at that time, but said that there was no reason why the case could not be tried at anytime after a couple of weeks. (I Supp. R. 44-45, 49-50). As noted, the trial began on March 21, 1979, less than one month after this hearing.
 

 We first observe that Beery cannot rely on the Speedy Trial Act, 18 U.S.C. § 3161
 
 et seq.,
 
 as a basis for reversal of his conviction. At the time Beery was indicted, the sanction of dismissal of the indictment, as provided in § 3162(a)(2), did not apply to indictments filed before July 1, 1979. 18 U.S.C. § 3163(c);
 
 United States v. Brown,
 
 600 F.2d 248, 253 (10th Cir.),
 
 cert. denied,
 
 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172.
 
 [11]
 
 As noted, the indictment was filed in September 1978, prior to the effective date.
 

 We also conclude that Beery’s Sixth Amendment right to a speedy trial was not violated. The district court noted the four-prong balancing test of
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, and held that Beery’s actions prevented an expedited trial. (I R. 79-80). On appeal, Beery argues his actions in requesting a stay and a continuance did not delay the proceedings and that the length of time between indictment and trial caused him harm in that he was not able to obtain a security clearance required by his employer.
 

 We cannot say that the trial court’s finding attributing the delay to Beery’s actions was clearly erroneous. While Beery’s request for a stay and continuance were not responsible for any significant delay, his other actions clearly contributed thereto. Under the four-prong test of
 
 Barker v. Wingo
 
 there was no error.
 
 See United States v. Latimer,
 
 511 F.2d 498 (10th Cir.).
 

 IV
 

 For reasons stated in Parts II and III, we find no merit in defendant Beery’s claims of error discussed therein. His remaining claims have been considered and we also find them to be without merit and to require no further discussion.
 
 [12]
 

 
 *870
 
 For reasons stated in Part I, we vacate the judgment as to the convictions on Counts I, II, III and IV. After the hearing on the claim of violations of defendant Beery’s rights under the Fifth Amendment and 11 U.S.C. § 25(a)(10) (1976), the district court will enter its findings and a proper order dismissing the indictment, ordering a new trial, or re-instating the convictions, as provided in Part I.
 

 Accordingly, the judgment is vacated as to the convictions on Counts I through IV and the cause is remanded for further proceedings in accord with this opinion.
 

 [1]
 

 . The facts are more fully set forth in our opinion filed today, which rejects Beery’s appellate arguments raised in the bankruptcy proceeding.
 
 In re
 
 Beery, - F.2d - (Nos. 77-1991, 78-1758, and 80-1577, 10th Cir.).
 

 [2]
 

 . The Bankruptcy Act of 1898 was repealed by the Bankruptcy Reform Act of 1978, Pub.L.No. 95-598, § 401, 92 Stat. 2682, generally effective October 1, 1979.
 
 Id.
 
 § 402. Beery filed his bankruptcy petition under Chapter XI on January 16, 1976. Thus his bankruptcy case was governed by the old Act.
 
 See id.
 
 § 403, 92 Stat. 2683;
 
 In re Stafos,
 
 666 F.2d 1343, 1345 n.1 (10th Cir.).
 

 The new Bankruptcy Code repealed § 25(a)(10). The procedure is now set forth in 11 U.S.C.A. § 344 (1979). This section carries 18 U.S.C.A. § 6001
 
 et seq.
 
 over into bankruptcy cases. For a witness to be ordered to testify before a bankruptcy court over the assertion of his Fifth Amendment privilege, the United States attorney for the district in which the court sits would have to request from the district court for that district an immunity order. The rule would apply to any witness in a bankruptcy case. If the immunity were granted, the witness could be required to testify. If not, he could claim his privilege against self-incrimination.
 
 See
 
 Notes of Committee on the Judiciary, Senate Report No. 95-989, 11 U.S.C.A. at p. 366.
 

 [3]
 

 . A dismissal or new trial might not be required if use or derivative use of immunized testimony were found harmless, beyond a reasonable doubt.
 
 See Harrington v. California,
 
 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284;
 
 Chapman v. California,
 
 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705.
 

 [4]
 

 . Beery argues on appeal that his testimony given at a Rule 205 examination in February 1976 was entitled to immunity. We do not discuss this contention because that transcript is not in our record.
 

 [5]
 

 . In
 
 United States v. Nemes,
 
 555 F.2d 51, 55 (2d Cir.), the court explained:
 

 The inference that the prosecutor’s lack of access to compelled testimony assures the existence of independent sources cannot be relied upon to afford the witness the full protection the Constitution guarantees. The prosecutor may have never seen the witness’s testimony and may believe in good faith that no one associated with the federal prosecution has seen it, but such a disclaimer does not preclude the possibility that someone who has seen the compelled testimony was thereby led to evidence that was furnished to federal investigators. Only by affirmatively proving that his evidence comes from sources independent of the immunized testimony can the prosecutor assure that the witness is in the same position he would have enjoyed had his self-incrimination privilege not been displaced by use immunity.
 

 [6]
 

 . Beery argues that Margie Redmond, the accountant for Dunes, committed perjury in giving this testimony as the exhibits and her testimony tend to show that some money was returned to Beery by the Dunes. (Brief of Appellant at 28). Viewing the evidence in the light most favorable to the government, we must conclude that Beery lost the money gambling at Las Vegas. (VI R. 307, 310-11).
 

 [7]
 

 . Beery cites cases for the proposition that the offense cannot occur until the appointment of the trustee.
 
 See Rachmil v. United States,
 
 43 F.2d at 880;
 
 United States v. Grant,
 
 1 F.2d at 725. (Brief of Appellant at 43). These cases were apparently decided under a prior statute, prohibiting concealment from the trustee. They cannot be held to limit the application of the present statute, which punishes concealment from the receiver and other persons, as well as the trustee.
 
 See United States v. Yasser,
 
 114 F.2d at 560.
 

 Beery also argues that the offense does not arise until there is a duty to reveal or disclose, and that in this case the duty did not arise until early 1977 when the bankruptcy court was petitioned for a turnover order of certain assets. (Brief of Appellant at 43). The case cited by Beery,
 
 Edwards v. United States,
 
 265 F.2d 302 (9th Cir.), does not support his argument. The case does state that there can be no offense until there is a duty to reveal or disclose,
 
 cf., United States v. Irwin,
 
 654 F.2d 671, 678-79 (10th Cir.),
 
 cert. denied,
 
 - U.S. -, 102 S.Ct. 1709, 72 L.Ed.2d 133; but does not state that a turnover order is required for the duty to arise. The court only held that there could be no offense where the concealment took place prior to the filing of the petition.
 
 Id.
 
 at 306. We can find no support for petitioner’s argument, and reject it as such a rule would encourage concealment until the assets were discovered and sought by the trustee. Such a-result would clearly frustrate the intent of the statute.
 

 [8]
 

 . The record shows that American Express received this check on January 30, 1976. (II R. 243). As noted, Beery received notice of the receiver’s appointment no later than February 5, 1976. We need not decide whether this evidence was sufficient to prove concealment of this check as we hold above that the evidence was sufficient without the proof as to this check.
 

 [9]
 

 . We note that the trial judge in giving instructions referred several times to Count III as one of concealing assets, rather than of withholding. The judge stated that the elements of the offense charged in Count III included concealing, and he did not mention withholding. (VIII R. 907, 910). The court also, however, read to the jury the clause of 18 U.S.C. § 152 providing for the offense of withholding, in addition to the clause providing for the offense of concealment. (VIII R. 908). There was thus some confusion and misstatement in the instructions.
 

 We note also that the judgment states that defendant was convicted on four counts of concealing sums of money, which should be corrected on remand to reflect that the conviction on Count III was for withholding a document.
 

 Although Beery did not object to the instructions on this ground at trial nor assert this error on appeal, we must decide whether there is plain error. We hold there is not. The indictment was submitted to the jury upon the agreement of both parties, without being read to them. (Id.). Thus the jurors had the indictment charging Beery, in Count III, with withholding a document. In addition, the crime of withholding may contain an element of concealment.
 
 See United States v. Nill,
 
 518 F.2d 793, 800 (5th Cir.). Although it is true that withholding requires possession of the document allegedly withheld, while the same is not necessarily true as to concealment, there is no factual issue with respect to Beery’s possession of the C. D. The evidence shows that Beery had possession of the C. D. There is no evidence to the contrary. Under all the circumstances we hold that no plain error is present.
 

 [10]
 

 . We do not agree that findings of the bankruptcy court that the assets were part of bankruptcy estate are controlling in the criminal case. A defendant in a criminal case is not collaterally estopped from raising issues that were determined against him in a prior civil action. In view of the different degrees of proof in civil and criminal cases, the adjudication of a fact in a civil proceeding is not binding in a criminal case under principles of collateral estoppel.
 
 See United States v. Konovsky,
 
 202 F.2d 721, 726-27 (7th Cir.); 1B J. Moore, Federal Practice 2702 (2d ed. 1980);
 
 cf., McKinney v. Alabama,
 
 424 U.S. 669, 686-87, 689 n.5, 96 S.Ct. 1189, 1198, 1200 n.5, 47 L.Ed.2d 387 (Brennan, J., concurring in the judgment);
 
 One Lot Emerald Cut Stones and One Ring v. United States,
 
 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438;
 
 but cf., McKinney v. Alabama,
 
 424 U.S. at 676-77, 96 S.Ct. at 1194;
 
 United States v. Blakely,
 
 491 F.2d 120, 122 n.2 (5th Cir.).
 

 [11]
 

 . 18 U.S.C. § 3163(c) was amended on August 2, 1979, by extending the effective date of sanctions from July 1, 1979, to July 1, 1980.
 

 [12]
 

 . Defendant Beery contended below and on appeal that he is entitled to funds from his bankruptcy estate to hire counsel to represent him in the criminal case. In pretrial proceedings Beery’s request was denied. In addition, the court found that Beery was not indigent and thus not entitled to court appointed counsel. Subsequent to these rulings and in a hearing held one day before trial, Beery again requested funds from the bankruptcy estate in order to hire counsel of his choice, which request was denied. The court, however, did
 
 *870
 
 offer to appoint an attorney to represent Beery. (VII R. 9). Beery declined, but did accept the court’s appointment of an attorney, the Assistant Public Defender, to sit at Beery’s counsel table to assist and advise him. (VII R. 18-23).
 

 On appeal, Beery does not argue that he was entitled to court-appointed counsel on the basis of indigency. In any event, such a claim would be meritless as the record shows that Beery was receiving some $1,800 per month in take-home pay. Beery argues that he is entitled to funds from the bankruptcy estate to conduct a defense in a criminal case arising out of the bankruptcy proceeding, the validity of which he was contesting. We cannot agree. First, as the district judge noted, he had no jurisdiction over Beery’s bankruptcy funds. Second, the Bankruptcy Act makes no provision for such a request.
 
 Cf., In re Beery,
 
 680 F.2d 705 (10th Cir. 1982). Thus no error is shown on the counsel matter.