**UNITED STATES of America**

v.

**The LAW FIRM OF ZIMMERMAN & SCHWARTZ, P.C., David Schwartz, Steven L. Zimmerman, Tommy Brown, the Sofa Gallery, Inc., d/b/a Levines' Home Furnishings Center, Marcee Levine, Gary Levine, Sales Results, Inc., a/k/a S.R., Inc., Stanley Lansing, William C. Schlapman, C.P.A., P.C., William Schlapman, and Shari Schlapman.**

**Cr. A. No. 90–CR–36.**

United States District Court,
D. Colorado.

May 23, 1990.

Stephen C. Peters, Asst. U.S. Atty., Denver, Colo., for the U.S.

Patrick J. Burke and John T. Baker, Bragg, Baker & Cederberg, P.C., Denver, Colo., for Law Firm of Zimmerman & Schwartz, P.C.

Lee D. Foreman, Denver, Colo., for David Schwartz.

Daniel J. Sears, Denver, Colo., for Steven Zimmerman.

Brian Holland, Denver, Colo., for Tommy Brown.

Leonard Chesler, Denver, Colo., for Marcee Levine.

Jeffrey Springer, Denver, Colo., for Gary Levine.

Robert A. Dill, Esq. Denver, Colo., for Stanley Lansing.

Michael Bender, Bender & Treece, Denver, Colo., for William C. Schlapman, C.P.A., P.C. and William C. Schlapman.

Thomas H. Coghill, Denver, Colo., for Shari Schlapman.

Robert T. Page, Denver, Colo.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

On January 26, 1990, the twelve defendants in this case were indicted in the District of Colorado on fifty-three counts of criminal wrongdoing, including conspiracy, mail fraud, "pension kickback", "embezzlement from pension and profit sharing plans", and bankruptcy fraud. After denying defendants' motions to declare the case complex in an Order entered March 8, 1990, all of the defendants, with the exception of Steven L. Zimmerman (Zimmerman), Tommy Brown (Brown), and Shari Schlapman (Schlapman), filed waivers of speedy trial. Defendant Stanley Lansing entered a guilty plea, but has not been sentenced. Accordingly, the case was set on two "tracks". The track one defendants, Zimmerman, Brown, and Schlapman, begin a jury trial on June 4, 1990. The remaining defendants, the track two defendants, are scheduled for trial in November.

Pending before me are Zimmerman's Motion for Disclosure and to Dismiss filed with the Court under seal and Motion to Dismiss Count 1 of the indictment for failure to charge an offense or, in the alternative, alleging a multiple conspiracy and Brown's Motion to Dismiss for Grand Jury Abuse and Motion to Dismiss Count 1 of the indictment. Schlapman joins in Zimmerman's motion for disclosure of grand jury material and in his motion to dismiss Count 1. Hearing on the motions was held on May 18, 1990.

Zimmerman moves to dismiss the indictment on the grounds that his Fifth Amendment right to indictment and due process has been violated. Specifically, Zimmerman argues that 1) the prosecutor usurped the province of the grand jury to deliberate independently the charges contained in the proffered indictment by ignoring proffers of exculpatory evidence, by offering conclusory evidence of interested parties and by commenting on the assertion of the privilege against self-incrimination, and 2) the government improperly used civil process to develop information to further this criminal prosecution. Defendant Tommy Brown (Brown) also seeks to dismiss the Indictment because exculpatory pre-indictment statements from alleged co-conspirators were not presented to the grand jury for its consideration. I deny the motions.

## I.

### A.

An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence, or even on information obtained in violation of a defendant's privilege against self-incrimination. *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); *United States v. Beery*, 678 F.2d 856, 858 (10th Cir.), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1982). An indictment can be dismissed only for prosecutorial misconduct that results in "some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Pino*, 708 F.2d 523, 530 (10th Cir.1983). "[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). In the *Nova Scotia* case, the Supreme Court articulated the applicable standard when dismissal is sought for nonconstitutional grand jury abuse.

> The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such

substantial influence, the violations cannot be deemed harmless.

*Nova Scotia, supra* 108 S.Ct. at 2378, quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring).

### 1. Exculpatory Evidence.

■ In order to render a decision free from bias, the grand jury must be both independent and informed. *United States v. Williams,* 899 F.2d 898, 903 (10th Cir. 1990). "To be independent and informed, the grand jury must be able to obtain all relevant evidence, since only then can its judgment truly be informed." *Id.* at 903, quoting *United States v. Flomenhoft,* 714 F.2d 708, 711 (7th Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984). Accordingly, a prosecutor has the duty to present substantial exculpatory evidence to the grand jury. *Id.* at 900–901. Although a prosecutor is not required to "ferret out" and disclose every bit of potentially exculpatory evidence to the grand jury, substantial exculpatory evidence discovered during the course of an investigation must be revealed. *Id.*

■ Having reviewed the documents presented, I conclude that the government did not withhold exculpatory evidence from the grand jury. The government honored its obligation to present exculpatory evidence when it 1) tendered to the grand jury two detailed letters written by Zimmerman's attorney and corresponding exhibits explaining why the evidence did not support an indictment against Zimmerman, 2) allowed a character witness for Zimmerman to testify a second time, and 3) marked Zimmerman's proposed instructions as a grand jury exhibit and allowed the grand jury to consider them as the law of the case.

Brown's argument that certain witnesses gave misleading and untruthful statements to the grand jury regarding his involvement in the alleged scheme to defraud creditors boils down to a challenge to the weight and credibility of the evidence presented to the grand jury. The evidence presented on the motion demonstrates that the government presented to the grand jury Brown's requested exculpatory evidence. The government allowed Brown to testify narratively before the grand jury prior to cross-examination and to introduce prepared written statements and other exhibits for the grand jury's consideration. Moreover, Brown and every other defendant who gave a statement, exculpatory or otherwise, to the United States Attorney had their statements transcribed and submitted to the grand jury upon request.

■ Further, the Supreme Court has held that "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment." *Nova Scotia,* 108 S.Ct. at 2377. Here defendants have not shown that the government knowingly introduced false or misleading evidence or that the government caused the witnesses to give false or misleading testimony. *Id.* Issues of weight and credibility of the evidence are properly for the petit jury.

### 2. Conclusory Evidence of Interested Parties and Comments on the Assertion of Fifth Amendment Privilege.

Zimmerman contends that the government encroached upon the province of the grand jury when it called upon Special Agent Jerry Burford as a "summary witness," witnesses D. Bruce Coles (Coles) (an attorney who formerly represented a secured creditor, Colorado National Leasing, Inc., now special counsel for the trustee handling the Levine bankruptcy matters), and Elizabeth J. Greenberg (Greenberg) (a Sherman and Howard attorney, formerly an associate of the prosecutor's, who represented Westinghouse, another secured creditor) to "impart their conclusions of criminal wrongdoing and their evaluation of the credibility of witnesses." Similarly, Brown contends that Burford and Coles made misleading and untruthful summaries to the grand jury regarding his involvement in the case. I disagree with defendants' contentions.

■ First, summary testimony is permitted to aid a grand jury investigation. *See Bank of Nova Scotia v. United States,*

108 S.Ct. at 2377. Here, after thirty-two witnesses had testified before the grand jury over a sixteen month period, and only after defendants' exculpatory evidence and legal theories were presented, was Special Agent Burford called to give summary testimony. Under these circumstances I conclude that the testimony was appropriate and nonprejudicial to defendants. *See Id.*

Second, Coles and Greenberg properly testified as experts in commercial law, as witnesses who had represented creditors of the Levines, and as witnesses who had dealt with the Law Firm of Zimmerman & Schwartz in an attempt to collect debts owed to their clients. Coles also testified as a witness who had served as special counsel to the trustee in bankruptcy. *See United States v. Anderson*, 778 F.2d 602, 605 (10th Cir.1985) (law professor's expert testimony on general concepts of trust law held proper). As such, Coles had extensive knowledge of the matters investigated by the grand jury. Moreover, Coles' opinion testimony regarding Marcee Levine's statements was presented to the grand jury as exculpatory evidence at the written request of Marcee Levine's attorney.

Finally, defendants' claim that several witnesses were improperly allowed to testify that certain statements were "false" or that certain conduct was "fraudulent". Under the circumstances here, I conclude that these statements did not compromise the grand jury's essential function. *See United States v. Goldman*, 439 F.Supp. 337, 343 (S.D.N.Y.1977) (phrase "scheme to defraud" conveys no technical meaning and is one which an average juror is able to understand without further explanation.).

■ Zimmerman further contends that, when within the grand jury's hearing, the government chastised defense counsel for their clients' assertion of their Fifth Amendment privilege against self-incrimination, the grand jury was deprived of "the objective and unbiased judgment which must be applied in deliberating the return of criminal charges." *Id.* at 18. Zimmerman acknowledges that these incidents alone would not justify dismissal of the indictment. He contends, however, that

"totality of the circumstances" in this case justify dismissal. *United States v. Roberts*, 481 F.Supp. 1385 (C.D.Cal.1980). I disagree.

The evidence on the motions shows that although the prosecutor exercised poor judgment when he chastised some witnesses and their counsel within the grand jury's hearing, he later honored without hesitation both witnesses' right to remain silent once the privilege was asserted and explained to the grand jury that no adverse inference could be drawn from the assertion of the right to remain silent. In light of these facts, I cannot find that the prosecutor's conduct towards these witnesses "substantially affected the grand jury's evaluation of the testimony or its decision to indict." *Nova Scotia*, 108 S.Ct. at 2377.

### B.

■ Zimmerman contends that the government improperly used the civil process to develop information to further the criminal prosecution. Zimmerman refers to instances where Coles imparted information received through the civil discovery process to the prosecutor and Special Agent A.J. Gehring (Gehring) of the Internal Revenue Service (IRS).

It is generally accepted that related civil and criminal proceedings may be pursued simultaneously. *United States v. Kordel*, 397 U.S. 1, 10, 90 S.Ct. 763, 768, 25 L.Ed.2d 1 (1969). As the Supreme Court recognized, "[i]t would stultify enforcement of federal law to require a governmental agency ... invariably to choose either to forego recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *Id.* Moreover, bankruptcy fraud is perhaps the most common ground for parallel federal proceedings because 18 U.S.C. § 152 prohibits fraudulent conduct either in contemplation of or during an actual civil case. *See generally, United States v. Beery, supra; see also, United States v. Jackson*, 836 F.2d 324, 330 (7th Cir.1987) (bankruptcy proceedings need not be concluded prior to the filing of criminal charges.).

Here, there is no impropriety apparent from the evidence presented on the motion. Under 18 U.S.C. § 3057(a), Bankruptcy Judge Brumbaugh reported the alleged fraud in the Levine cases, as required, to the United States Attorney. Under 18 U.S.C. § 3057(b), the United States Attorney was required to commence an investigation "without delay" and to present any probable offenses for the grand jury's consideration. Judge Brumbaugh suggested that the government contact Coles because Coles was the first attorney to uncover the alleged fraud. Accordingly, Coles disclosed to the United States Attorney information purported to be within his personal knowledge. Conversely, defendants do not claim, and there is no suggestion, that the government in the criminal proceedings has disclosed improperly to the Bankruptcy Court officials matters arguably occurring before the grand jury. *See generally, United States v. Sells Engineering,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (disclosure of grand jury materials for use in a parallel civil proceeding requires a showing of particularized need and a corresponding court order.).

Zimmerman further contends that the IRS violated indirectly the administrative subpoena process by issuing administrative summons to gather information for use in the criminal case. I am not persuaded.

26 U.S.C. § 7602 empowers the IRS to summons taxpayers for inquiry into their tax liability, to examine "any books, papers, records, or other data" relevant to the inquiry, and to take the testimony of the taxpayer. The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324 (1982), amended § 7602 in two ways. First, it expanded the purposes for which the summons power could be used to include criminal as well as civil tax investigations. *Pickel v. United States,* 746 F.2d 176 (3d Cir.1984); *Moutevelis v. United States,* 727 F.2d 313 (3d Cir.1984). Second, it drew a "bright line" delineating that the summons power ends when the investigation is referred to the Justice Department for prosecution. These sections of TEFRA were, in part, a response to *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Joint Committee on Taxation, *Annual Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act,* 97th Cong.2d Sess. at 234–36 (1982). In *LaSalle,* the Supreme Court held that a summons issued "solely for the purpose of unearthing evidence of criminal conduct" may be enforced only if the summons is issued 1) before the IRS recommended the case to the Justice Department for criminal prosecution and 2) if the agency issued the summons in good faith.

■ Defendants bear the burden of showing either 1) that the summonses were not issued as part of a legitimate investigation into a violation of the tax laws, but were instead used to gather evidence for another agency or to harass or pressure taxpayers in connection with another matter or 2) that a Justice Department referral had taken place before the summonses were issued. *See Pickel v. United States, supra* at 184. This burden is a heavy one. *LaSalle Nat'l Bank, supra* 437 U.S. at 316, 98 S.Ct. at 2367.

■ Agent Gehring testified credibly that after reading an article about the Levines in *Up the Creek* newspaper, he began an administrative investigation for the purpose of ascertaining the Levines' possible tax liabilities. He commenced his investigation independently of the request from the Bankruptcy Court for an inquiry and served Coles with a summons to further his administrative investigation. *See* 26 U.S.C. § 7602; *see also, Anaya v. United States,* 815 F.2d 1373 (10th Cir.1987). Agent Gehring further testified that, independent of the United States Attorney's Office's criminal investigation, in June 1988 he began an IRS investigation into the Levines' possible criminal violations of the Internal Revenue Code.

In September 1988, the United States Attorney's Office requested that Agent Gehring turn over any documents or information he had obtained in his investigation of the Levines. Agent Gehring refused this request because of IRS disclosure

laws. The United States Attorney's Office then requested Agent Gehring's cooperation with the grand jury hearings. After obtaining authorization from the IRS head, Agent Gehring joined the grand jury investigation and Coles provided evidence pursuant to the grand jury subpoenas.

 Investigation of criminal violations of the Internal Revenue Code is a valid purpose for issuance of a summons under § 7602. *Moutevelis*, 727 F.2d at 315. The IRS cannot act solely as an information-gathering agency for the United States Attorney's Office or the FBI. However, here, the evidence leads to a contrary conclusion.

In conclusion, application of the standards of *Bank of Nova Scotia, supra* and *Williams, supra* to the facts of this case demonstrates that dismissal of the indictment is not warranted for grand jury abuse, if any, and that the grand jury's indictment was independent and informed.

## II.

Count 1 of the indictment alleges that from July 1, 1985, through and including the date of the indictment, each of the named defendants and others not charged therein, conspired to: 1) defraud the United States Bankruptcy Court; 2) defraud the United States Treasury; 3) conduct fraudulent transfers to conceal property of Sofa Gallery, Inc. and Gary and Marcee Levine from creditors in contemplation of bankruptcy; 4) fraudulently transfer concealed property of Sofa Gallery, Inc. and Gary and Marcee Levine from the United States Trustee's special counsel and the attorneys for the creditors; 5) fraudulently make false oaths in the pending bankruptcy cases; 6) make false documents and verifications under the penalty of perjury in relation to bankruptcy; 7) fraudulently receiving a material amount of property from Gary and Marcee Levine after filing bankruptcy; 8) conceal, destroy, and falsify documents in contemplation of bankruptcy; 9) devise a scheme to defraud creditors and Home Insurance Company to obtain property via the United States mail; 10) embezzle assets from the Sofa Gallery's pension and profit sharing plan; and 11) conduct

financial transactions involving unlawful activity not disclosed to the Bankruptcy Court while embezzling money from the Sofa Gallery pension and profit sharing plan to conceal the source and ownership of such property. Defendants Zimmerman and Schlapman move to dismiss Count 1 of the indictment because it fails to charge an offense, or, alternatively, that it alleges a multiple conspiracy. Similarly, Brown argues for dismissal of Count 1 because it alleges "numerous and distinct conspiracies."

### A. Failure to Charge a Cognizable Offense Under the Federal Criminal Code.

 Count 1 of the indictment incorporates by reference the individual Chapter 7 petitions of Gary and Marcee Levine, the case files and discovery records from each bankruptcy case, and the case files and discovery records from the companion adversary proceeding, which do not concern offenses defined under the Criminal Code. Hence, Zimmerman and Schlapman contend that Count 1 fails to allege a cognizable criminal offense. Specifically, they contend that the indictment fails to provide them with notice of the nature and cause of the accusation as constitutionally required and that the conspiracy count is based improperly on civil claims for relief rather than the crimes as charged in the count itself.

The government has stated that it is willing to strike those portions of paragraphs 23 and 24 which purport to incorporate the entire bankruptcy files by reference into the introduction of the charging document. Defendant Zimmerman contends, however, that even if those portions of Count 1 are stricken, the indictment is invalid facially because it fails to specify the nature of the information communicated to the grand jury.

In *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the Supreme Court set forth the essential criteria for testing the sufficiency of an indictment. These criteria were adopted by the Tenth Circuit in *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), *cert. denied,*

429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976):

> First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause. And a purpose corollary to the first is that the indictment inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. Furthermore, and of paramount importance, a sufficient indictment is required to implement the Fifth Amendment guaranty and make clear the charges so as to limit a defendant's jeopardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him.

(Citations omitted.).

Paragraphs 23 and 24 of Count 1 charge:

> 23. Following several months of discussion and negotiation with creditors, on or about September 26, 1986, the DEFENDANT LAW FIRM OF ZIMMERMAN & SCHWARTZ, P.C., through DEFENDANT DAVID SCHWARTZ, filed a petition under the bankruptcy provision of Chapter 7 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado on behalf of the DEFENDANT GARY LEVINE. That case was known as In re GARY LEVINE, Debtor, Case No. 86 B 9068 C, *and the entire case file and official discovery records from that case and its companion case, known as Adversary Action 88–A–900, are realleged and incorporated here as if fully set forth in their entirety.* The defendants alleged in that bankruptcy case that DEFENDANT GARY LEVINE was insolvent and unable to satisfy his debts, including the secured and unsecured debts of the SOFA GALLERY, which were each listed as DEFENDANT GARY LEVINE'S debts in the petition.

> 24. On or about February 5, 1987, the DEFENDANT LAW FIRM OF ZIMMERMAN & SCHWARTZ, P.C., through DEFENDANT TOMMY BROWN, also filed a petition under the bankruptcy provision of Chapter 7 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado on behalf of the DEFENDANT MARCEE LEVINE. That case was known as In re MARCEE LEVINE, Debtor, Case No. 87 B 1302 E, *and the entire case file and official discovery records from that case and its companion case, known as Adversary Action 88–A–900, are realleged and incorporated here as if fully set forth in their entirety.* The defendants alleged in that bankruptcy case that DEFENDANT MARCEE LEVINE was also insolvent and unable to satisfy her debts, including the secured and unsecured debts of the SOFA GALLERY, which were each listed as DEFENDANT MARCEE LEVINE'S debts in the petition. The bankruptcy proceedings are ongoing as of the date of this indictment.

(Emphasis added.).

Upon reviewing Count 1 in its entirety, I conclude that striking the above emphasized portion of paragraph 23 and 24 will not deprive Zimmerman of notice of the basis for the conspiracy count. *See United States v. Whitman,* 665 F.2d 313, 316–318 (10th Cir.1981) (Deletions from Counts in indictment did not change meaning of the charges from those presented to the grand jury.). Zimmerman will be apprised sufficiently of the nature of the accusations against him with reasonable certainty. Paragraphs 23 and 24 inform defendants of why they are accused of conspiracy. *See United States v. Rogers,* 636 F.Supp. 237 (D.Colo.1986). These paragraphs inform defendants of the allegations that they conspired to defraud the Bankruptcy Court by alleging in Gary and Marcee Levines' bankruptcy petitions that the Levines were insolvent and unable to satisfy their debts, including the Sofa Gallery's debts, which were listed in Gary and Marcee Levines' individual petitions.

## B. Count 1 Alleges a Multiple Conspiracy.

■ Defendants Zimmerman, Schlapman, and Brown contend that Count 1, which alleges a conspiracy over four and one-half years between twelve defendants to commit multiple offenses against the United States, actually alleges multiple conspiracies. Defendants further contend that retention of Count 1 will unfairly prejudice them. I disagree.

■ The existence of a single conspiracy is ultimately a factual question left to the jury's determination. *United States v. Smith*, 789 F.2d 196 (3d Cir.1986); *United States v. Heath*, 580 F.2d 1011 (10th Cir.1978). The indictment need only allege enough to permit a jury to infer the existence of a common, design, plan, or goal among the conspirators. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1975). A distinction must be made, however, between separate conspiracies, in which certain parties are common to all, *see Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and a single conspiracy, in which the various parties are joining and terminating their relationship at different times. As one court has stated:

> In essence, the question is what is the nature of the agreement. If there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement among all the parties constitutes a single conspiracy.

*United States v. Varelli*, 407 F.2d 735, 742 (7th Cir.1969).

Thus, a single conspiracy may have as its objective the commission of numerous offenses. *See, e.g., United States v. Dickey*, 736 F.2d 571, 583 (10th Cir.1984); *United States v. Ballard*, 663 F.2d 534, 544 (5th Cir.1981). It is the unlawful agreement that constitutes the single crime. Multiple criminal objectives attendant to a single criminal agreement do not give rise to "multiple conspiracies." *United States v. Dickey, supra* at 581–582.

■ Although guilt in conspiracy cases is still individual and personal and not a matter of mass application, *United States v. Dickey, supra,* here, the evidence before the grand jury shows probable cause to believe that each defendant entered into the alleged conspiracy. The government need not prove that each conspirator knew the identities of all his co-conspirators, or that he was aware of all the details of the alleged conspiracy. *United States v. DePeri*, 778 F.2d 963, 975 (3d Cir.1985). Rather, each co-conspirator need only be aware of the scheme's general scope. *See Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). Simply stated, the government's theory in this case is that defendants worked together to liquidate Levine's Home Furnishings and the Sofa Gallery pension and profit sharing plans, to divert the proceeds through the law firm and accounting firm trust accounts, to convert these funds for personal use, including the capitalization of a new enterprise without disclosure to creditors, and to take affirmative measures to conceal the claimed fraud.

Finally, I find no merit in Zimmerman's argument that Count 1 alleges a multiple conspiracy, because the Sofa Gallery did not file bankruptcy. Accordingly, defendants' motions to dismiss Count 1 for alleging a multiple conspiracy is denied.

## III.

■ Defendants Zimmerman, Brown, and Schlapman move for disclosure of grand jury material pursuant to Fed.R. Crim.P. 6(e)(3)(C)(ii). Defendants contend that a "particularized need" for disclosure in this case outweighs the policy of secrecy. I disagree.

There is "a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble, Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The Supreme Court consistently has held that Fed.R.Crim.P. 6(e)(3)(C)(i) requires a strong showing of particularized need before grand jury materials are disclosed. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).

Rule 6(e)(3)(C)(i) provides that disclosure of grand jury materials may be had "when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Based upon this standard, and my ruling on defendants' motions to dismiss due to grand jury abuse, I conclude that defendants have made an insufficient showing to require disclosure of the entire grand jury proceedings.

Here, the government has already disclosed Jencks Act materials to defendants, including grand jury minutes and exhibits. The defendants' attached motions and exhibits indicate that they are already in possession of a large portion of the grand jury record and that further disclosure is unwarranted.

Zimmerman specifically requests disclosure of the record of the instructions given to the grand jury on the day the indictment was returned. The evidence shows that Zimmerman's proposed instructions and other evidence that he requested be presented were presented before the grand jury. Accordingly, I also deny Zimmerman's specific request for disclosure of the instructions given to the grand jury. *See United States v. Keller*, 730 F.Supp. 151, 163 (N.D.Ill.1990) (refusing to order disclosure of instructions given to the grand jury by the prosecutors on the day of deliberations); *United States v. Abrams*, 539 F.Supp. 378, 388 (D.S.N.Y.1982) (refusing to order disclosure of instructions given to the grand jury on the elements of the crimes charged).

It is therefore ORDERED that defendants' motions to dismiss are DENIED and the emphasized portions of paragraphs 23 and 24 of the indictment referred to in Part II A. of this Order are STRICKEN.

It is FURTHER ORDERED that the motions for disclosure are DENIED.