**UNITED STATES of America, Plaintiff,**

v.

**Marcee LEVINE, Gary Levine, William C. Schlapman, C.P.A., P.C., and William Schlapman, Defendants.**

Crim. A. No. 90–CR–36.

United States District Court,
D. Colorado.

Oct. 23, 1990.

Leonard Chesler, Denver, Colo., for Marcee Levine.

Jeffrey Springer, Denver, Colo., for Gary Levine.

Michael Bender, Denver, Colo., for William C. Schlapman and William C. Schlapman, C.P.A., P.C.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Before me are defense motions to dismiss counts, to require the government to make an election, to strike language from the Indictment, and for separate trials. Following hearing, I took the motions under advisement. Below is my ruling on those motions.

On January 26, 1990, twelve defendants in this case were indicted in the District of Colorado on fifty-three counts of criminal conduct, including conspiracy, mail fraud, interstate transportation of stolen property, pension kickback, embezzlement, bankruptcy fraud, and money laundering. Four of the original twelve defendants entered guilty pleas, two were convicted following jury trial, and two corporate defendants were severed from the remaining four defendants.

I. MOTIONS CONCERNING THE CONSPIRACY CHARGE OF COUNT ONE

A. *Gary Levine's Motion to Dismiss Count One, and William C. Schlapman, C.P.A., P.C. and William Schlapman's Request to Compel the Government to Elect a Conspiracy Theory of Count One*

■ Gary Levine moves to dismiss Count One contending that the count is duplicitous. The other defendants join in this motion. Defendants William C. Schlapman, C.P.A., P.C. and William Schlapman (collectively Schlapman) move for an election of offenses in the alternative.

Under Federal Rule of Criminal Procedure 8(a), each count must charge only one offense. Count One charges conspiracy under 18 U.S.C. § 371. That section provides for criminal penalties "[i]f two or more persons conspire *either to commit any offense* against the United States, *or to defraud* the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy...." 18 U.S.C. § 371 (emphasis added). In pertinent part, the Indictment alleges that the defendants

did knowingly, intentionally, willfully, and unlawfully conspire, combine, and agree *to defraud* the United States Bankruptcy Court in contemplation of, during, and in relation to the LEVINE bankruptcy cases, *to defraud* the Department of the Treasury by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service in the collection of income taxes, *and to commit the following offenses against the United States:*

(Emphasis added). The Indictment then alleges various violations of Title 18 U.S.C.

Gary Levine, relying on *United States v. Thompson,* 814 F.2d 1472 (10th Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 101, 98 L.Ed.2d 61 (1987), contends that this count charges two conspiracies; one to defraud

the United States Bankruptcy Court and the Department of Treasury, and another to commit offenses against the United States. I disagree.

In *Thompson*, the defendant had pled guilty to an information charging conspiracy to commit offenses against the United States (mail fraud) and was later indicted for conspiring to defraud the government. The defendant challenged the indictment arguing that it should be dismissed on double jeopardy grounds because "jeopardy attached when he pled guilty to the information charging him with conspiracy to commit mail fraud under 18 U.S.C. § 371 (1982). He therefore would face double jeopardy if he is tried under the subsequent indictment...." *Id.* at 1475–76. The district court disagreed and denied the motion.

On interlocutory review, the Tenth Circuit compared the elements of the alleged conspiracy to commit offenses against the United States with the elements of the alleged conspiracy to defraud the United States to determine if the alleged conspiracies were identical for double jeopardy purposes. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The Tenth Circuit held they were not. *Thompson,* 814 F.2d at 1477.

The narrow issue in *Thompson* was double jeopardy under the *Blockburger* test. The *Thompson* court did not have the issue of duplicity before it. Consequently, *Thompson* is not controlling here.

The reasoning of the Ninth Circuit in *United States v. Smith,* 891 F.2d 703 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990), which squarely addressed the duplicity issue, is compelling. In concluding that the defendants were properly charged in a single count with a conspiracy to defraud the United States and to commit offenses against the United States, the court stated that

> [i]t would be strange to infer that Congress intended to punish twice a conspiracy that violates both clauses. Where a single conspiracy statute prohibits alternative acts, courts should not infer the legislature's intent to impose multiple

punishment. *See Prince v. United States,* 352 U.S. 322, 329 [77 S.Ct. 403, 407, 1 L.Ed.2d 370] (1957). The clause "defraud the United States merely expands the scope of the offense by including another object of a conspiracy that might not otherwise be covered by the clause "any offense."

*Id.* at 712–13; see also Goldstein, Conspiracy to Defraud the United States, 68 Yale L.J. 405 (1959).

Furthermore, § 371 creates a single offense but specifies alternative means to commit the offense. In such a case, "an indictment may charge the commission of such offense by all the means mentioned, using the conjunctive 'and' wherever the statute uses the word 'or,' without being duplicitous." *Travis v. United States,* 247 F.2d 130, 134 (10th Cir.1957), *rev'd on other grounds,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); *see United States v. Herbert,* 502 F.2d 890, 893–94 (10th Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1134, 43 L.Ed.2d 403 (1975); *Kitchens v. United States,* 272 F.2d 757, 761 (10th Cir. 1959), *cert. denied,* 362 U.S. 942, 80 S.Ct. 809, 4 L.Ed.2d 772 (1960); *McDonough v. United States,* 227 F.2d 402, 404 (10th Cir. 1955). As persuasively interpreted in *Smith,* § 371 creates alternative ways to commit a single offense.

*Smith* represents the majority rule. *See, e.g., United States v. Persico,* 520 F.Supp. 96, 102 (E.D.N.Y.1981) (and cases cited therein). The only decision that may be contrary to this view is *United States v. Haga,* 821 F.2d 1036, 1043 (5th Cir.1987). The better reasoned rule is stated in *Smith.* Accordingly, I conclude that Count One is not duplicitous.

█ Even if the *Thompson*-analysis applied to render the count duplicitous, however, dismissal would not be warranted in this case. The remedies of dismissal or election are inappropriate where, as here, the duplicity is harmless and the ideals underlying the rule against duplicity remain secure. *See, e.g., United States v. Alsobrook,* 620 F.2d 139, 143 (6th Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980); *United States v. Margi-*

**1438**

otta, 646 F.2d 729, 732–33 (1981); *see also United States v. Gambino,* 729 F.Supp. 954, 971–72 (S.D.N.Y.1990) ("[a] count of an indictment should only be ruled impermissibly duplicitous when the policy goals underlying the doctrine are offended...."); *United States v. Finley,* 705 F.Supp. 1272, 1295 (N.D.Ill.1988); *United States v. Sugar,* 606 F.Supp. 1134, 1146 (S.D.N.Y.1985) (same); *United States v. Mott,* 603 F.Supp. 1322, 1325 (S.D.N.Y.1985) ("Rule 8, Fed.R. Crim.P., which requires separate offenses to be charged separately, can be relaxed in appropriate circumstances. [Citation omitted]. The important inquiry is whether combining the offenses creates a risk of the type of unfairness against which the rule was meant to guard."); *United States v. Berardi,* 675 F.2d 894, 897–99 (7th Cir. 1982) (same); *United States v. Robin,* 693 F.2d 376, 378–79 (5th Cir.1982) (same); *see also United States v. Bowline,* 593 F.2d 944, 947 (10th Cir.1979).

My review of Count One leads me to conclude that: (1) with proper jury instruction, a conviction could not be obtained without a unanimous verdict as to each of the objects of the conspiracy charged in the count; (2) the specificity of Count One protects defendants' Sixth Amendment right to notice of the charges; and (3) because it is clear that Count One charges multiple objects of a single conspiracy, *United States v. Law Firm of Zimmerman and Schwartz, P.C.,* 738 F.Supp. 407, 416 (D.Colo.1990), defendants are secured their Fifth Amendment protection against double jeopardy. *See United States v. Duncan,* 850 F.2d 1104, 1108–09 & n. 4 (6th Cir.1988); *United States v. Shorter,* 809 F.2d 54, 58 & n. 1 (D.C.Cir.), *cert. denied,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987); *United States v. Kimberlin,* 781 F.2d 1247, 1250 (7th Cir.1985), *cert. denied,* 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986); *United States v. Aguilar,* 756 F.2d 1418, 1419 n. 2 (9th Cir.1985); *Robin,* 693 F.2d at 378; *Berardi,* 675 F.2d at 899; *Margiotta,* 646 F.2d at 733; *Alsobrook,* 620 F.2d at 142; *United States v. Wright,* No. 89–CR–1093, 1990 WL 78035 (N.D.Ill. May 31, 1990) (LEXIS, Genfed library, Courts file); *United States v. Zolp,* 659 F.Supp. 692, 725 (D.N.J.1987). These policy goals underlying the rule against duplicity are not offended in this case.

**B.** *Zimmerman's Motion to Dismiss Count One*

The defendants have adopted a motion filed earlier by Zimmerman, a defendant in this case who was convicted in a previous trial. The motion was based on the theory that Count One charged multiple conspiracies because it alleged multiple illegal objectives. I rejected that motion in *Zimmerman,* 738 F.Supp. at 416, and I reject it again here. A single conspiracy may encompass multiple illegal objectives. *United States v. Peveto,* 881 F.2d 844, 854–55 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *Zimmerman,* 738 F.Supp. at 416; *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980).

**C.** *Schlapmans' Motion to Strike the Defraud Clause Language from Count One of the Indictment*

The Schlapman defendants move to strike from Count One the language charging that the defendants conspired to defraud the United States Treasury Department. The Schlapmans argue that I should strike the language because the count fails to specify "what the agreement was with respect to the conspiracy to defraud the Department of Treasury and how it was accomplished." I disagree.

When the government charges a conspiracy to defraud the United States, it must plead an agreement with respect to the essential nature of the alleged fraud. *See United States v. Rosenblatt,* 554 F.2d 36, 42 (2d Cir.1977). The government satisfied that requirement here. The section of Count One entitled "Overt Acts" goes far beyond merely pleading the language of the statute. It sets forth specific transactions involving the Treasury Department and the alleged conspirators. Count One notifies the defendants of the essential nature of the charge. *See United States v. Anderson,* 577 F.Supp. 223, 229 (D.Wyo. 1983), *rev'd on other grounds,* 778 F.2d 602 (10th Cir.1985).

## D. *Motions to Strike Overt Acts*

The Schlapmans also move to dismiss several overt acts alleged in the Indictment on the grounds that they occurred after the alleged conspiracy terminated on April 1, 1988. That was the date Bankruptcy Judge Brumbaugh referred the Levine bankruptcy actions to the Department of Justice for criminal investigation pursuant to 18 U.S.C. § 3057(a). I reserve ruling on the date that the alleged conspiracy ended until after presentation of evidence at the James hearing.

The Schlapmans and Gary Levine also move to strike certain overt acts concerning alleged false statements made to the United States Attorney's Office and findings of Judge Brumbaugh. The rationale to strike the language is that they are not "overt acts in furtherance of a conspiracy to defraud." Because the statements may have been made to conceal fraud in furtherance of a continuing conspiracy, however, I reserve ruling on these motions as well.

## II. MOTIONS TO DISMISS VARIOUS OTHER COUNTS

### A. *Gary Levine's Motion to Dismiss Counts Two Through Thirty, Thirty–Three Through Forty–Four and Fifty–One Through Fifty Two*

■ Gary Levine moves to dismiss counts 2–30 (mail fraud and interstate transportation of stolen property), 33–41 (bankruptcy fraud and money laundering), and 44 and 51–52 (bankruptcy and tax fraud) on the ground that each count is duplicitous. He contends that because these counts contain a clause incorporating in each all previous allegations, each of these counts alleges multiple offenses. This argument has been rejected consistently. *See, e.g., United States v. Mastelotto,* 717 F.2d 1238, 1244–46 (9th Cir.1983); *United States v. Robinson,* 651 F.2d 1188, 1194–95 (6th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981); *United States v. Bartemio,* 547 F.2d 341, 345 (7th Cir.1974). I agree with these courts that such pleading does not render the challenged counts duplicitous.

### B. *Motions to Dismiss Counts Four Through Seven*

■ Both Gary and Marcee Levine move to dismiss Counts 4–7 (charging interstate transportation of property obtained through fraud, ITSP) because: (1) the counts fail to allege that the Levines knew that the property was stolen, converted, or taken by fraud; and (2) the property was not stolen, converted or taken by fraud within the meaning of 18 U.S.C. § 2314. Each count refers to S.R., Inc. checks drawn on the Ashland State Bank in Highland Park, Illinois alleged to have been paid under an undisclosed "consultation agreement." I agree with their second ground for dismissal. Thus, I need not discuss the first.

Counts 4–7 allege a violation of 18 U.S.C. § 2314. The counts state that the Levines:

> devised and intended to devise a scheme and artifice to defraud creditors for the purpose of obtaining money and property as more fully set forth in Counts 2 and 3 above, did knowingly, willfully and unlawfully transport and cause to be transported in interstate commerce from Highland Park, Illinois, to Denver, Colorado, during the execution and concealment of that fraudulent scheme, money and property in excess of $5,000....

The Indictment alleges that the Levines received a kickback from Lancing, the liquidator of their furniture assets. Lancing, by agreement with the creditors, was paid ten percent of the liquidation proceeds. By the undisclosed agreement between Lancing and the Levines, the Levines received one-third of Lancing's percentage. The counts challenged here charge the Levines with taking the kickback money across state lines.

The elements of a § 2314 violation are set forth in *United States v. Cardall,* 885 F.2d 656 (10th Cir.1989). "The essential elements of ITSP are: (1) transporting, or causing the transportation, (2) in interstate commerce, (3) of property valued at $5,000 or more, (4) with knowledge that it has been stolen, converted, or fraudulently taken from its rightful owner. 18 U.S.C.

§ 2314 (1982)." *Cardall,* 885 F.2d at 674 (footnotes omitted).

In *United States v. Carman,* 577 F.2d 556 (9th Cir.1978), the court dismissed a § 2314 charge, refusing to extend the section to cover "a debtor's fraudulent concealment of his own shrinking assets from the nervous scrutiny of his general creditors." *Id.* at 565. The *Carman* court's refusal to extend § 2314 to cover hiding assets in contemplation of bankruptcy was in part because of "[t]he bristling specificity of 18 U.S.C. § 152, which inter alia, makes concealment of assets in contemplation of bankruptcy a crime...." *Id.; see United States v. Brandon,* 651 F.Supp. 323, 325–26 (W.D.Va.1987).

The Tenth Circuit has adopted the proposition that "§ 2314 'should not be expanded at the government's will beyond the connotation—depriving an owner of its rights in property—conventionally called to mine.'" *United States v. Rogers,* 786 F.2d 1000, 1003 (10th Cir.1986) (quoting *United States v. McClain,* 545 F.2d 988, 1002 (5th Cir. 1977)). The primary rationale behind this rule lies in the § 2314 requirement that the defendant obtain property from another.

> It is quite evident from the language of [§ 2314] itself that the activity Congress intended to punish was the interstate transportation of stolen property. Although the words "converted" and "taken by fraud" are used in addition to the word "stolen," the use is in the disjunctive. In addition, both "convert" and "take by fraud" embrace the wrongful acquisition of the property of another just as does the word "steal." And, even though the indictment omits the word "stolen" relying instead on the words "converted and taken by fraud," the burden is on the government to prove that the property in question had been wrongfully appropriated.

*United States v. Burbank,* 848 F.2d 453, 455–46 (4th Cir.1988); see *Rogers,* 786 F.2d at 1003; *Carman,* 577 F.2d at 565 ("[w]hether the matter be approached from the standpoint of fixing the limits of the words 'stolen,' 'converted,' or 'taken by fraud,' one encounters the requirement that the 'stealing,' 'conversion,' or 'taking' must be from one having the attributes of

an owner."); *United States v. Bennett,* 665 F.2d 16, 22 (2d Cir.1981) (§ 2314 does not "reach every form of commercial dishonesty....").

The government's theory is that the Levines stole the money from their creditors. It is difficult to harmonize this theory with the Indictment. The checks were drawn from Lancing's account and made payable to the Levines by Lancing. Resolving any ambiguity in § 2314 in favor of lenity, *Rogers,* 786 F.2d at 1003, I cannot conclude that the creditors were deprived of any property rights conventionally called to mind.

### C. *Gary Levine's Motion to Dismiss Counts Eight Through Eleven*

 Gary Levine contends that Counts 8–11, charging kickbacks in violation of 18 U.S.C. § 1341 (mail fraud), should be dismissed because the Indictment fails to allege that any tangible property rights of the creditors were threatened by the payments from Lancing to the Levines. Again, I agree

Section 1341 protects property rights and not intangible rights. *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). As one court held:

> Significantly, the courts have generally concluded that kickback schemes—traditionally, one of the most common forms of criminal activity for which pre-McNally convictions were obtained on an intangible rights theory of mail fraud—will no longer implicate section 1341 unless the indictment charges and the government's proof establishes that the alleged victim of the scheme, as opposed to the payor of the kickbacks, lost a cognizable, and not merely a 'constructive' interest in money or property as a result of the artifice.

*United States v. Johns,* 742 F.Supp. 196 (E.D.Pa.1990). *But see United States v. Little,* 889 F.2d 1367, 1368–69 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990).

*United States v. Shelton,* 848 F.2d 1485 (10th Cir.1988), is in accord with *Johns.* In *Shelton,* the defendants were charged with mail fraud because they gave an insurance

company state business on condition that the insurance company would split the commission. The government's theory, termed "constructive trust," was that the scheme defrauded the citizens and government of Kentucky of rights such as the right to have governmental affairs conducted honestly. *Id.* at 1487.

The Tenth Circuit held that "[u]nder *McNally*, instructions on the elements of mail fraud must require the jury to find that the victim of the scheme was itself defrauded of money or property." *Id.* at 1495 (emphasis in original). "[T]he constructive trust theory as it relates to bribes and kickbacks does not satisfy *McNally* because retaining a bribe or kickback does not divert money intended for the employer, thereby depriving the employer of property that is rightfully his." *Id.* at 1492 (citing *United States v. Holzer*, 840 F.2d 1343, 1348 (7th Cir.1988); *United States v. Ochs*, 842 F.2d 515 (1st Cir.1988)); *see United States v. Lance*, 848 F.2d 1497, 1501 (10th Cir.1988). I conclude that the absence of allegation that the alleged liquidation kickback here was the creditors' money renders Counts 8 through 11 defective for failure to charge an offense.

Nonetheless, the government argues that, by incorporating factual allegations of other counts in the Indictment, it has alleged creditor ownership of the money at issue. Contrary to this assertion, however, none of the incorporated factual allegations state that the creditors retained an ownership interest in the money they paid to Lancing for his liquidation services. In *Shelton*, it made no difference that had the Commonwealth known of the arrangement between the defendants and the insurance companies it would have never agreed to provide the companies with its business. *See Shelton*, 848 F.2d at 1491. Likewise here, although, arguably the creditors would never have agreed to the arrangement had they known of the agreement between Lancing and the Levines, this does not make their loss more than intangible. Therefore the counts fail to allege the elements comprising mail fraud.

### D. *Gary Levine's Motion to Dismiss Counts Thirty–Five Through Forty*

Gary Levine moves to dismiss Counts 35–40, charging money laundering in violation of 18 U.S.C. § 1956, on the ground that the Indictment fails to allege that he acted knowing that the property involved represented the proceeds of some form of unlawful activity. The Indictment, Gary Levine argues, alleges only that he knowingly conducted financial transactions which in fact involved proceeds from illegal activity, omitting that he knew the property represented the unlawful proceeds. I disagree.

The Indictment explicitly states that the defendants acted "knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of these specified unlawful activities." ¶ 351; *see United States v. Phillips*, 869 F.2d 1361, 1364 (10th Cir. 1988) ("[i]n interpreting an indictment, we are governed by practical rather than technical considerations."), *cert. denied*, —— U.S. ——, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989). I conclude that the government has meet its pleading requirements on these counts.

### E. *Marcee Levine's Motion to Dismiss Counts Thirty–Five Through Thirty–Eight*

Marcee Levine moves to dismiss Counts 35–38 (money laundering) on the ground that Indictment fails to allege a violation of 18 U.S.C. § 1956(a)(1)(B)(i). I disagree.

The charging statute provides criminal penalties for

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

 \* \* \* \* \* \*

(B) knowing that the transaction is designed in whole or in part—

1442

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

To prove a violation of this section, the government must prove *inter alia* that the money used in the transaction was derived from specified unlawful activity. *See United States v. Kimball,* 711 F.Supp. 1031, 1033 (D.Nev.1989).

■ Marcee Levine's motion attacks the Indictment only as to this element. The Indictment alleges in Counts 35–38 that the "specified unlawful activity" that was the source for the money allegedly laundered, was the violation by the defendants of 18 U.S.C. § 152. This is sufficient to allege the first element of the money laundering statute. *See Phillips,* 869 F.2d at 1364.

F. *Schlapmans' Motion to Dismiss Count Fifty–Three, or in the Alternative, Motion for Bill of Particulars*

The Schlapmans move for dismissal of Count Fifty–Three of the Indictment which charges that William C. Schlapman knowingly assisted in preparing fraudulent tax returns for the Levines. See 26 U.S.C. § 7206(2). In the alternative, the Schlapmans move for a bill of particulars. I deny both motions.

■ Count Fifty–Three alleges:

On or about December 8, 1988, in the State and District of Colorado, and elsewhere, DEFENDANT WILLIAM C. SCHLAPMAN knowingly and willfully aided, procured, counseled, advised, and assisted in the preparation and presentation to the Internal Revenue Service of a 1986 Form 1040 U.S. Individual Joint Income Tax Return, filed in the name of taxpayers GARY and MARCEE LEVINE, which was fraudulent and false as to a material matter, namely, that the Form 1040 represented on line 23, page 1, that the taxpayers total income of $75,117.00, whereas, as the defendant then and there well knew and believed, the taxpayers total income which was not reported in the amount of at least $38,000.00.

The Schlapmans argue that the count must be dismissed because the Indictment fails to allege: (1) how Schlapman knew the income was under reported; (2) how he knew the return was fraudulent; (3) the source of the allegedly unreported income; (4) how the government calculated that the Levines' income was under reported; and (5) the precise amount. I disagree.

■ The Schlapmans cite no authority, and I find none, requiring such meticulous pleading. *See Robbins v. United States,* 476 F.2d 26, 30 (10th Cir.1973) (indictments "must be considered from a broad and enlightened standpoint of right reason rather than from a narrow view of technicality and hair splitting."). These details are essentially evidentiary in nature and are properly excluded from the Indictment. Indeed, even at trial the government does not have to prove the exact amount defendants allegedly misstated on their tax returns. *United States v. Hallmark,* 911 F.2d 399, 402 (10th Cir.1990). For the same reason, I deny the Schlapmans' alternative motion for a bill of particulars. *See United States v. Whatley,* 480 F.Supp. 307, 309 (W.D.Okla.1978).

III. GARY LEVINE'S MOTION FOR SEPARATE TRIAL FROM MARCEE LEVINE

■ Gary Levine moves for a trial separate from his spouse, Marcee Levine. I may grant a severance where "it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together...." Fed.R. Crim.P. 14. Defendants are not entitled to separate trials as a matter of right and granting of separate trials is discretionary. *United States v. Lane,* 883 F.2d 1484, 1499 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 872, 107 L.Ed.2d 956 (1990).

■ In evaluating a Rule 14 motion, I must balance the prejudice to the defendant caused by a joint trial against the expense and inconvenience of separate trials. *Lane,* 883 F.2d at 1498; *United States v. Hack,* 782 F.2d 862, 870 (10th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). As such, Gary

Levine bears the heavy burden of showing real prejudice to his case if tried jointly with his wife. *United States v. Parnell,* 581 F.2d 1374 (10th Cir.1978), *cert. denied,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979). Indeed, "[s]everence is justified only in the most extreme cases." *United States v. Rogers,* 899 F.2d 917, 926 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990).

■ Gary Levine contends that he will be prejudiced by being tried with his wife. First, he argues that at trial Marcee Levine will emphasize that she provided information under oath to the government prior to her being indicted and without any inducement. She will do this, Gary Levine asserts, in an effort to show that she had nothing to hide from the government. Consequently, he argues, the jury will hear of his wife's cooperation and, thus, necessarily note the exercise of his Fifth Amendment right to remain silent. This potential problem, however, can be averted by a cautionary jury instruction. Gary Levine provides no reason to depart from the well-founded presumption that juries follow their instructions. *See Lane,* 883 F.2d at 1498–99.

■ Second, Gary Levine argues that spousal privileges make joint trial prejudicial. There are two marital privileges. The first is the confidential communications privilege which allows a defendant to prevent his or her spouse from testifying about statements made in confidence between the two. The second privilege prevents spousal testimony adverse to a defendant spouse. This privilege may be asserted only by the witness-spouse. *Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). I construe all evidentiary privileges narrowly, because they are inherently in derogation of the search for truth. *United States v. Neal,* 743 F.2d 1441, 1447 (10th Cir.1984), *cert. denied,* 470 U.S. 1086, 105 S.Ct. 1848, 85 L.Ed.2d 146 (1985). The Colorado Supreme Court likewise has strictly limited spousal privileges. *Petro–Lewis Corp. v. District Court,* 727 P.2d 41, 43–45 (Colo.1986).

■ Gary Levine argues that a joint trial would prevent him from testifying as to what he was not told by Marcee Levine. Presumably, he intends to testify that Marcee Levine did not tell him of her allegedly illegal acts, thus to some degree distancing him from the activity of his wife. Assuming for the purpose of this motion that what Marcee Levine did not tell Gary Levine is considered a communication, I conclude that the crime-fraud exception to the marital communications privilege applies to negate any claim of privilege. *Neal,* 743 F.2d at 1447. Consequently, there are no marital confidential communications policy reasons weighing in favor of separating the trials of Marcee and Gary Levine.

■ Gary Levine next contends that a joint trial would place him in the situation of either exercising his right not to testify against his spouse or testifying on his own behalf. This limitation on options, he argues, warrants separate trials. I disagree.

A similar argument was addressed by the Ninth Circuit in *United States v. Vaccaro,* 816 F.2d 443 (9th Cir.), *cert. denied,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987). There the court rejected the argument that the husband and wife should have been tried separately finding that "no specific showing has been made that favorable evidence was excluded" because of the choice each spouse had to make. *Vaccaro,* 816 F.2d at 450–51; *see United States v. Petty,* 602 F.Supp. 996, 998 (D.Wyo.1984). Gary Levine's assertion that he will suffer irreparable injury absent a separate trial is speculative. He is as free to take the stand in his own defense as is Marcee Levine. *Rogers,* 899 F.2d at 926. Accordingly IT IS ORDERED that

(1) Gary Levine's Motion to Dismiss Count 1 (Duplicity) is DENIED;

(2) William Schlapman and William C. Schlapman, C.P.A., P.C.'s Request to Compel the Government to Elect a Conspiracy Theory of Count One is DENIED;

(3) Zimmerman's Motion to Dismiss Count 1 (Failure to Charge Offense, or Multiple Conspiracy) (adopted by all defendants) is DENIED;

(4) William Schlapman and William C. Schlapman, C.P.A., P.C.'s Motion to

Strike the Defraud Clause Language from Count One of the Indictment is DENIED;

(5) Gary Levine's Motion to Strike Overt Acts is RESERVED;

(6) Zimmerman's Motion to Strike Overt Acts (adopted by William Schlapman and William C. Schlapman, C.P.A., P.C.) is RESERVED;

(7) William Schlapman and William C. Schlapman, C.P.A., P.C.'s Motion to Strike Overt Acts is RESERVED;

(8) Gary Levine's Motion to Dismiss Counts 2 through 30, 33 through 41, 44, and 51 through 52 (Duplicity) is DENIED;

(9) Gary Levine's motion to Dismiss Counts 4 through 7 (Interstate Transportation of Stolen Property) for Failure to Charge an Offense is GRANTED;

(10) Marcee Levine's Motion to Dismiss Counts 4, 5, 6, and 7 is GRANTED;

(11) Gary Levine's Motion to Dismiss Counts 8 through 11 (Mail Fraud—Kickback Agreement) for Failure to Charge an Offense is GRANTED;

(12) Gary Levine's Motion to Dismiss Counts 35 through 40 (Money Laundering—Schlapman Trust Account) for Failure to Charge an Offense is DENIED;

(13) Marcee Levine's Motion to Dismiss Counts 35, 36, 37, and 38 is DENIED;

(14) William Schlapman and William C. Schlapman, C.P.A., P.C.'s Motion to Dismiss Count 53, or in the Alternative, Motion for Bill of Particulars is DENIED;

(15) Gary Levine's Motion for Separate Trial from Defendant Marcee Levine is DENIED.